**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| ZEV SUPPLIES CORP.,<br><br>*Plaintiff*,<br>v.<br><br>ANKER INNOVATIONS LIMITED and SHENZHEN OCEANWING SMART INNOVATIONS TECHNOLOGY CO., LTD.,<br>*Defendants*. | Civil Action No. 0:26-cv-60509 |

**REBUTTAL EXPERT DECLARATION OF JIM GANDY**
**AS TO NON-INFRINGEMENT OF THE ASSERTED DESIGN PATENT**

**TABLE OF CONTENTS**

I. INTRODUCTION ........ 3

II. QUALIFICATIONS ........ 5

III. MY KNOWLEDGE OF THE APPLICABLE LEGAL STANDARDS FOR INFRINGEMENT OF A DESIGN PATENT ........ 7

IV. THE NON-INFRINGEMENT ANALYSIS FAILS TO ACCOUNT FOR FEATURES OF THE ‘325 PATENT SHOWN IN THE PRIOR ART ........ 9

V. THREE-WAY ANALYSIS OF THE ‘325 PATENT, THE ZOMEE PRODUCT AND THE PRIOR ART ........ 21

VI. OBVIOUSNESS ........ 30

VII. CONCLUSION ........ 31

**REBUTTAL EXPERT DECLARATION OF JIM GANDY AS TO NON-INFRINGEMENT OF THE ASSERTED DESIGN PATENT**

I, Jim Gandy, submit this declaration in support of plaintiff Zev Supplies Corp., ("Plaintiff"). In accordance with 28 U.S.C. § 1746, I declare under penalty of perjury that the statements herein are true and correct to the best of my knowledge, belief, recollection, and understanding. All statements made on information and belief are believed to be true. I am over the age of eighteen, and, if asked to do so, I could competently testify to the matters set forth herein.

## I. INTRODUCTION

1. I have been retained by counsel as an independent expert witness to provide my opinion regarding the above-captioned proceeding. Based on my education and my experience in design patents, I have been asked by "Plaintiff" to evaluate and respond to the infringement and obviousness opinions offered by Tim Fletcher in his expert report dated March 17, 2026, concerning the sole claim of U.S. Design Patent No. D1,087,325, ("the '325 Patent"). This rebuttal declaration sets forth my opinions regarding Mr. Fletcher's analysis, including my opinion concerning the alleged infringement and obviousness of "the '325 Patent".

2. As discussed in further detail in this Declaration and any supplemental reports, testimony, or declarations that I may provide, it is my opinion that "Plaintiff's" Zomee Mother's Nature W1 Warming Wearable Breast Pump (the "Zomee Product"), does not infringe "the '325 Patent". As for the issue of obviousness regarding the sole claim of "the '325 Patent", I do not express a formal opinion at this time, but only provide a rebuttal to the opinions of Tim Fletcher as set forth in his declaration.

3. The following is my report and it and the exhibits hereto contain my opinions and the support therefore. In connection with rendering my opinion I have reviewed and relied upon the following materials:

- U.S. Design Patent No. D1,087,325, ("the '325 Patent");
- File History for U.S. Design Patent No. D1,087,325 including a review of all prior art patent references cited on the Patent;
- "Plaintiff's" Zomee Mother's Nature W1 Warming Wearable Breast Pump (the "Zomee Product");

- U.S. Design Patent No. D1,012,269, ("the '269 Patent");
- U.S. Design Patent No. D1,012,270, ("the '270 Patent");
- European Design No. 015021137-0001, ("the EM '0001 design");
- Chinese Design No. 202230717268.2, ("the CN '268.2 design");
- Chinese Design No. 202230726833.1, ("the CN '833.1 design");
- Chinese Design No. 202230799771.7, ("the CN '771.7 design");
- Chinese Design No. 202230820719.5, ("the CN '719.5 design");
- PLAINTIFF ZEV SUPPLIES CORP.'S MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION;
- DECLARATION OF DOVID RENDLER;
- DECLARATION OF TUVIA ROTBERG;
- DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION; and
- EXPERT DECLARATION OF TIM FLETCHER IN SUPPORT OF DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION, ("the Fletcher declaration")

4. In addition to the above materials, I have also relied on my own education, training, experience and knowledge in the field of design patents.

5. I may also consider additional documents and information that have not yet been provided to or discovered by me should such documents and information be brought to my attention after the date I submit this Declaration, and I reserve the right to add to or amend my opinions in connection with the same.

6. The analysis in this Declaration is exemplary. Additional reasons may support my conclusions, but they do not form my current analysis. The fact that I do not address a particular reason does not imply that I would agree or disagree with such additional reason.

7. I receive compensation at a rate of $350 per hour for my time spent on this matter, except for any travel time, which is billed at one-half of my hourly rate. I am also being reimbursed for reasonable and customary expenses associated with my work on this matter. I have no financial

interest in the patents involved in this proceeding, and my compensation is not dependent on the outcome of this proceeding. The conclusions I present are based on my own judgment. I am not an employee of "Plaintiff", Tarter, Krinsky & Drogin LLP, or any affiliated companies.

## II. QUALIFICATIONS

8. My current curriculum vitae is attached as Exhibit 1.

9. I hold a Bachelor of Science in Architectural Design Technology from Temple University in Philadelphia, Pennsylvania, where I graduated in 1972.

10. Upon graduation, I worked as a Design Patent Examiner in Art Unit 2911 for the United States Patent and Trademark Office ("USPTO"). My responsibilities included examining design patent applications, examining reexamination and reissue applications, issuing determinations on examined applications, initiating interference proceedings, and preparing examiner's answers for applications on appeal to the Board of Patent Appeals and Interferences.

11. In 1979, I was promoted to Primary Examiner and continued to work as a Design Patent Examiner in Art Unit 2911 for the USPTO. With this promotion, I gained full signatory authority and trained new examiners while occasionally fulfilling supervisory patent examiner duties when the art unit supervisor was away.

12. In my 24 years of work as a Design Patent Examiner at the USPTO, I made patentability determinations in approximately 10,000 design patent applications that I examined. Based on that experience I consider myself to have a firm understanding of what the proper legal standard is for patentability under sections 171, 102, 103 and 112 of Title 35 of the United States Code, (35 U.S.C). I have examined design patent applications in every class under the Design Patent Classification Schedule.

13. In 1996, I became a Supervisory Patent Examiner for the USPTO and transitioned to Art Unit 2913. As supervisor, I managed the work flow, quality, and timeliness of examiners in my art unit. I also trained junior examiners and provided additional training to primary examiners to maintain consistency in work product. I evaluated the performance of all examiners in the art unit. Finally, I also developed the Design Examiner Supplemental Training Guide and led the program for uniformity of examination practice for the entire Design Patent Technology Center.

14. In 1998, I became the Design Patent Practice Specialist for Technology Center 2900 at the USPTO. I continued to train all new examiners, junior examiners when they joined the USPTO

and trained all examiners at Technology Center 2900 through continuing education programs. I was in charge of updating the Design Examiner Supplemental Training Guide and Chapter 1500 Design Patents in the Manual of Patent Examining Procedure. I responded to inquiries from external customers about design patent practice and procedure on a daily basis. I continuously reviewed cases, decisions, and reports coming from the courts, the Board, and the Office of Patent Quality Review to train examiners and update the previously mentioned documents. Finally, I also made presentations to attorneys and inventor groups on behalf of the USPTO.

15. During my career at the USPTO, I received an outstanding rating under the performance appraisal plan for 32 consecutive years. I also received various accolades including the Department of Commerce Bronze Medal Award in 1983; the USPTO's Distinguished Career Award in 2000 in recognition of consistent superior performance in design patent application examination and in art unit leadership; and the Norman P. Morgenstern Award in 2004 for the leadership and innovation contributions made by Supervisory Patent Examiners.

16. My work at the USPTO required me to become knowledgeable of the perspective of the "ordinary observer" and the "designer of ordinary skill in the art". It was necessary for me to decipher and understand complex visual designs and their ornamental features and determine whether variations between designs were "substantial" or *de minimis,* which is exactly the analysis required in this litigation.

17. Currently, and since my retirement from the USPTO in 2005, I have occasionally counseled patent attorneys and agents who file design patents applications.

18. In the past I have served as an expert in other design patent related matters, a detailed list of cases in which I have served as a design patent expert is set forth in my curriculum vitae which is attached as Exhibit 1.

19. My qualifications to serve as an expert in this matter are based on my formal technical education and my decades of experience at the USPTO in analyzing the ornamental and structural features of consumer products. My architectural training provided me with a fundamental understanding of industrial design principles, including spatial relationships, geometric proportions, human factors like ergonomics, and the relationship between form and function. My educational background is directly applicable to consumer product design, such as the "Zomee

product" at issue in this case, which require a balance between aesthetic appeal and ergonomic utility.

## III. MY KNOWLEDGE OF THE APPLICABLE LEGAL STANDARDS FOR INFRINGEMENT OF A DESIGN PATENT

20. As a design patent expert, I am not an attorney and, therefore, nothing in this report should be construed as me offering any legal opinions. Rather, I am offering design assessments and opinions. In rendering my analysis, I have been informed by counsel for "Plaintiff" the legal standards for determining infringement of a design patent. As a retired design patent examiner I am also aware of the legal standards for infringement of a design patent. I am also aware of the legal standards for infringement of a design patent in view of my experience in reviewing cases and decisions from the courts as the Design Patent Practice Specialist as indicated in paragraph 14 above, as well as my years of experience since retiring from the USPTO as a design patent expert witness. I have applied those standards in forming the opinions expressed in this report.

21. Based on my conversations with counsel for "Plaintiff" and my experience as the Design Patent Practice Specialist reviewing administrative decisions and articles discussing design patent law principals, and my experience as a design patent expert witness, I have the following understanding of design patent infringement. First, it is my understanding that the claim in a design patent application is directed to the entire design and not individual parts or elements thereof. In addition, it is my understanding that the proper inquiry in determining if a patented design has been infringed is whether the accused design appropriates the claimed design as a whole. Further, it is my understanding that design patent infringement is determined by first construing the claim to the design and then comparing it to the design of the accused device. It's also my understanding that in construing the claim a design is better represented by an illustration rather than a verbal description since any description would not likely be intelligible without the illustration. Therefore, it is my opinion that the sole claim of "the '325 patent" should be construed based on the drawings.

22. In view of my experience as the Design Patent Practice Specialist and as a design patent expert witness and my conversations with counsel for "Plaintiff" I am aware that the sole test for determining whether a design patent has been infringed is the "ordinary observer" test. It's my understanding that under the "ordinary observer" test for infringement of a patented design an

accused design must be so similar in overall appearance to the claimed design that an "ordinary observer" would be deceived into purchasing one, supposing it to be the other. Moreover, it is my understanding that under this test an "ordinary observer" is one who is conversant with the prior art and that in order to determine whether an accused design appropriates the patented design a comparison of the features of the patented design with the prior art and the accused design may be necessary. In this instance, an "ordinary observer" is a potential purchaser of maternity products who is familiar with breast pumps and their different designs. Such an "ordinary observer could be pregnant woman or a family member/ friend who is looking to purchase a baby shower gift.

23. Further, in view of my experience as the Design Patent Practice Specialist and design patent expert witness and my discussions with counsel for "Plaintiff" it is my understanding that a design patent infringement analysis is a two-step process. The first step is to consider whether the Claimed Design and Accused Design are "sufficiently distinct" or "plainly dissimilar." If the Claimed Design and the Accused Design are found to be "plainly dissimilar", there is no patent infringement. However, if the Claimed Design and Accused Design are not "plainly dissimilar", I understand that the second step in an infringement analysis involves a three-way comparison where courts simultaneously compare the patented design and the accused design to similar designs found in the prior art. In doing this comparison, if the prior art is shown to be a "crowded field," (i.e. many designs share similar features to the patented design and to the accused design), the scope of the patent's protection narrows considerably.

24. As I understand, the role of prior art is to help the finder of fact consider seemingly small or minor details that differentiate the patented design from the prior art. When there are similar prior art designs, the differences between the claimed design and the accused design that might not be noticeable in the abstract can become significant to the hypothetical "ordinary observer" who is conversant with the prior art.

25. As will be shown, I do not consider the shape and appearance of the closest prior art, the claimed design of "the 325 Patent" and the "Zomee product" to be "sufficiently distinct" or "plainly dissimilar" for the reasons explained below, since they have similar design features. Therefore my infringement analysis will involve a three-way comparison of the patented design and the "Zomee product" in the context of the closest prior art designs. As my analysis will show, because of the similarity of the prior art designs, the differences between the claimed design of

"the '325 Patent" and the "Zomee product", in my opinion, would be considered significant to the hypothetical "ordinary observer" who is conversant with the prior art.

## IV. THE NON-INFRINGEMENT ANALYSIS FAILS TO ACCOUNT FOR FEATURES OF THE '325 PATENT SHOWN IN THE PRIOR ART

26. In his declaration, Tim Fletcher conducts an analysis between the claimed design of "the '325 Patent" and the "Zomee product" as well as the claimed design of "the '325 Patent" and the prior art identified above. This analysis is flawed. Specifcally, as shown in paragraphs 53–69 of "the Fletcher declaration," Mr. Fletcher first compares "the '325 Patent" to the "Zomee product" in isolation and concludes they share "abundant similarities," then separately compares "the '325 Patent" to each individual prior art reference and identifies differences between "the '325 Patent" and each respective reference. The report concludes that because the "Zomee product" is "closer to the D'325 Patent than it is to [any individual reference of] the prior art," infringement is shown. In doing so, Mr. Fletcher treats the infringement analysis and the prior art analysis as two entirely separate and independent exercises, when established design patent law, as described above in Paragraphs 21–24, requires a three-way comparison in which the prior art constrains and informs the analysis. Mr. Fletcher acknowledges this standard in paragraph 35 of his declaration, but never evaluates whether the similarities he identifies between "the '325 Patent" and the "Zomee product" are similarities that derive from features already in the prior art. The practical effect of Mr. Fletcher's error is that he treats "the '325 Patent" as though it has broad ornamental scope, when in fact the prior art confines it to a very narrow scope of protection.

27. Mr. Fletcher's analysis is further flawed in that he only relies on two views from "the '325 Patent" drawings, namely the front view and one side view and comparing them to the two corresponding views of the "Zomee product" and the prior art identified above. By relying on just the front and one side view, Mr. Fletcher fails to provide a complete analysis of the overall peripheral shape or configuration of the claimed design of "the '325 Patent" and the "Zomee product" and the prior art identified above. Specifically, by failing to include views from the top and bottom, a complete understanding of the peripheral shape or configuration of the claimed design of "the '325 Patent" and the "Zomee product" and the prior art identified above cannot be adequately determined from just the two dimensional front and side views. When views of the claimed design of "the '325 Patent" from the front, sides, top and bottom are compared to the

corresponding views of the "Zomee Product" and the prior art identified above, as shown on pages 13–17, and 23–25 below, it is apparent that the differences in the peripheral shape or configuration identified in "the Fletcher declaration" are insignificant and *de minimis.* In particular, in the side-by-side comparison of the claimed design of "the '325 Patent" and "the CN '719.5 Design" from the front, sides, top, bottom and rear, on pages 23–26 below their peripheral shape or configuration are almost identical to each other. Because the peripheral shape or configuration of the claimed design is substantially shown by the prior art, it cannot serve by itself as a basis for infringement, yet that is precisely the foundation on which Mr. Fletcher's analysis rests.

28. In paragraph 55 of his declaration, Mr. Fletcher idenitifes eight features that he contends are points of similarity between "the '325 Patent" and the "Zomee product," treating them as evidence of infringement. But Mr. Fletcher's analysis is structurally backwards. Rather than first using the prior art to identify what is ornamentally distinctive about the claimed design, and then asking whether the "Zomee product" appropriates those distinctive features, Mr. Fletcher leads with the similarities between the "Zomee product" and "the '325 Patent," and then separately catalogues differences between "the '325 Patent" and the prior art in paragraphs 62–68 of his declaration, treating those differences as confirmation of the significance of the similarities he has already identified. However, the correct approach requires using the prior art to narrow the scope of the claimed design—the features the claimed design shares with the prior art cannot be relied upon to show infringement. Only after those features in the prior art are set aside should the analysis ask whether the accused product appropriates whatever remains that is genuinely distinctive. Mr. Fletcher never performs that narrowing step. Indeed, when the narrowing step is properly applied here, as I describe below, the features that Mr. Fletcher identifies as similarities between the "Zomee Product" and "the '325 Patent" are the same features shared across the entire field of wearable breast pumps.

29. As I understand, the claimed design of "the '325 Patent" and the prior art designs identified above are all directed to wearable breast pumps, and as such, must have a peripheral shape or configuration that conforms to breast anatomy. Any significant deviation in peripheral shape or configuration would render such a device non-functional. As a result, the differences identified by Mr. Fletcher in paragraphs 62-68 of his declaration—where he compares the claimed design of "the '325 Patent" to each prior art reference and notes small variations in features

including, for example, the overall shape, shape of top center of the pump, curvature where the top of the body meets with the breast shield, curvature of middle portion of the side profile—are simply *de minimis* or inconsequential to the overall visual appearance to an ordinary observer and not meaningful ornamental distinctions. Therefore, since the peripheral shape or configuration of the prior art designs shown below are substantially the same as the claimed design of "the '325 Patent", the peripheral shape of the claimed design of "the '325 Patent" may not be relied upon by itself to support a finding of infringement. In other words, since the dominant feature of the claimed design of "the '325 Patent" and the "Zomee product", namely their peripheral shape or configuration, is shown in the prior art, the focus of the infringement analysis must be on other features of the design. *See ABC Corporation 1 v. Partnership & Unincorporated Associations Identified on Schedule "A"*, 51 F.4th 1365 (Fed. Cir. 2022).

30. As will be apparent from the illustrations below, the peripheral shape or configuration of the prior art wearable breast pumps is substantially the same as the claimed design of "the '325 Patent". Therefore, the peripheral shape or configuration of the claimed design of "the '325 Patent" cannot be relied upon by itself as a basis for infringement thereof. I further understand that the broken lines shown in the drawing views of "the '325 Patent" are directed to unclaimed portions of the breast pump and form no part of the claimed design. Therefore, those broken lines will not be considered in assessing the features of the claimed design of "the '325 Patent" and the prior art breast pumps shown in the design patents.

Claimed Design
of '325 Patent



Claimed Design
of '269 Patent



Claimed Design
of '270 Patent



EM '0001 Design



CN '268.2 Design




CN '833.1 Design




CN '771.7 Design



CN '719.5 Design



Claimed Design
of '325 Patent



Claimed Design
of '269 Patent



Claimed Design
of '270 Patent



EM '0001 Design




CN '268.2 Design



CN '833.1 Design



CN '771.7 Design



CN '719.5 Design



Claimed Design of '325 Patent



Claimed Design of '269 Patent



Claimed Design of '270 Patent



EM '0001 Design



CN '268.2 Design



CN '833.1 Design



CN '771.7 Design



CN '719.5 Design



Claimed Design of '325 Patent



Claimed Design of '269 Patent



Claimed Design of '270 Patent



EM '0001 Design



CN '268.2 Design



CN '833.1 Design



CN '771.7 Design



CN '719.5 Design



Claimed Design of '325 Patent



Claimed Design of '269 Patent



Claimed Design of '270 Patent



EM '0001 Design



CN '268.2 Design



CN '833.1 Design



CN '771.7 Design



CN '719.5 Design



Claimed Design of '325 Patent



Claimed Design of '269 Patent



Claimed Design of '270 Patent



EM '0001 Design



CN '268.2 Design



CN '833.1 Design



CN '771.7 Design



CN '719.5 Design



Claimed Design of '325 Patent



Claimed Design of '269 Patent



Claimed Design of '270 Patent



EM '0001 Design



CN '268.2 Design



CN '833.1 Design



CN '771.7 Design



CN '719.5 Design



31. As the basic peripheral shape of the claimed design of "the '325 Patent" is shown by the prior art designs depicted above, and cannot be relied upon by itself to support a basis for infringement, it is now necessary to look at the details and various features of the claimed design to determine how it is distinguished over the prior art.

32. Besides the basic peripheral shape, which cannot be relied upon by itself to support a basis for infringement, the claimed design of "the '325 Patent" is comprised of the following four features:[1]

1. A control panel at the upper portion thereof;
2. A centrally located split line that separates the upper and lower compartments having a rectangular section in the middle thereof;
3. Two small downwardly projecting legs that are horizontally spaced from each other at the bottom portion thereof; and
4. A slight outwardly protruding breast shield at the rear portion thereof that circumscribes the entire claimed design.

33. With regards to the control panel feature, all of the prior art designs depicted above, except that shown in "the '270 Patent", have a distinct control panel at the top thereof. This alone establishes that a control panel at the top of a wearble breast pump was a well-known design feature in the field, not a distinctive or novel element of the claimed design of "the '325 Patent," amd thiu cannot support a finding of infringement. Moreover, as shown below, it is not only the presence of a control panel that appears in the prior art, but also, more specifically, the specific shape. The control panel at the top of "the EM '0001 Design" has an overall shape and appearance substantially the same as that shown in the claimed design of "the '325 Patent", any differences being *de minimis* and would not be noticeable to an "ordinary observer" given such time and attention as a purchaser gives. While Mr. Fletcher acknowledges the presence of a control panel (or keypad) in the prior art, he fails to recognize that the control panel of "the EM '0001 Design" is substantially the same as that of "the '325 Patent". Had he done so, he would have been compelled to acknowledge that this feature, which he treats as a point of similarity supporting

[1] The similarities between "the '325 Patent" and the "Zomee product" identified by Mr. Fletcher map directly onto these same features. Thus, as I describe in the following paragraphs, these alleged similarities are characteristics already present in the prior art.

infringement when comparing the claimed design to the "Zomee product", is not new with the claimed design and therefore cannot support a finding of infringement.

Top View of Control Panel of Claimed Design of '325 Patent



Top View of Control Panel of EM '0001 Design



34. Regarding the centrally located split line that separates the upper and lower compartments having a rectangular section in the middle thereof in the claimed design of 'the '325 Patent", four of the prior art designs, namely the design of "the '270 Patent", "the CN '268.2 Design", "the CN '771.7 Design" and "the CN 719.5 Design" depicted above include a centrally located split line that separates the upper and lower compartments having a rectangular section in the middle thereof with a line at the bottom of the rectangle, such as the claimed design of 'the '325 Patent", (see the perspective, front and side views above). Hence, this feature is not new with the claimed design, but rather a well know design feature in wearable breast pumps. Mr. Fletcher devotes considerable attention to minor variations in this feature across the prior art, including, for example, differences in the radius at the split line, proportion of split line to overall height, and the presence or absence of a line at the bottom of the rectangular section (Fletcher Decl. ¶¶ 62(b), 62(c), 63(f), 64(c), 64(h), 65(c), 65(f), 66(d), 66(f), 67(d), 67(f), 68(d), 68(f)). But these minor variations do not create meaningful visual distance between the claimed design and the prior art. Mr. Fletcher ignores that at least four prior art designs, as I identify above, share the same fundamental split line configuration as the claimed design, and thus cannot bear the infringement weight Mr. Fletcher places on it.

35. The third feature of the claimed design of 'the '325 Patent", namely the two small downwardly projecting legs that are horizontally spaced from each other at the bottom portion thereof is also not new therewith, since both the design of "the '270 Patent" and "the CN 833.1 Design" include two small downwardly projecting legs that are horizontally spaced from each

other at the bottom portion thereof, (see the front, side and bottom views shown above). Mr. Fletcher completely ignores these features of "the '270 Patent" and "the CN 833.1 Design" in his analysis.

36. The slight outwardly protruding breast shield shown in the claimed design of 'the '325 Patent" is again not new with the claimed design, but clearly shown to be a well-known design feature in wearable breast pumps as shown by the design of "the 269 Patent", "the '270 Patent", "the CN '268.2 Design", "the CN '833.1 Design", "the CN '771.7 Design" and "the CN '719.5 Design", (see all of the views above).

37. Contrary to Mr. Fletcher's assertion in paragraph 69 of his declaration, that the "Zomee product" may be somewhat closer in overall appearance to the claimed design than any single prior art reference is not enough to establish infringement. It is apparent from the views of the prior art designs shown above that none of the four features of the claimed design of "the '325 Patent" identified above are new, but rather well known design techniques in the field of wearable breast pumps, and clearly within the knowledge of a designer of ordinary skill in the art. While Mr. Fletcher seemingly acknowledges the presence of these features in the prior art, he contends that their differences emphasize the substantial similarity between "the '325 Patent" and the "Zomee product" (Fletcher Decl. ¶¶ 60, 69). But those minor differences Mr. Fletcher identifies in the prior art are not sufficient to render the features of the claimed design ornamentally distinctive. The claimed design is therefore entitled only to a narrow scope of protection, and as demonstrated in Section V below, the "Zomee Product" falls outside even that narrow scope.

## V. THREE-WAY ANALYSIS OF THE '325 PATENT, THE ZOMEE PRODUCT AND THE PRIOR ART

38. When the claimed design is viewed in the context of a crowded prior art field in which all four of its identified features were already well established, the scope of any protection afforded by "the '325 Patent" is necessarily narrow. "The Fletcher declaration" fails to conduct a three-way comparison to compare the patented and accused design in the context of similar designs found in the prior art. Specifically, "the Fletcher declaration" fails to conduct a side-by-side analysis of the claimed design of "the '325 Patent" the "Zomee Product" and the closest prior art identified above.

39. In order to assess whether the design of the Zomee Product" appropriates "the claimed design of "the '325 Patent", it is appropriate to identify the features of each and then compare them

with each other and the prior art. In doing so, I understand that the broken lines shown in the drawing views of "the '325 Patent" are directed to unclaimed portions and form no part of the claimed design. Therefore, those broken lines will not be considered in assessing the features of the claimed design in "the '325 Patent". The design of the Zomee Product" and the claimed design of "the '325 Patent" will be compared to the features of "the CN '719.5 Design" and "the CN '833.1 Design" which I consider to be the closest prior art to them. With that said, below is a side-by-side visual comparison of the claimed design of "the '325 Patent" and "the CN '719.5 Design", "the CN '833.1 Design" and the "Zomee Product".

Claimed Design
of '325 Patent



CN '719.5 Design




Zomee Product



CN '833.1 Design



Claimed Design
of '325 Patent



CN '719.5 Design



Zomee Product




CN '833.1 Design



Claimed Design of '325 Patent



CN 719.5 Design



CN 833.1 Design



Zomee Product



Claimed Design of '325 Patent



CN 719.5 Design



CN 833.1 Design



Zomee Product



Claimed Design of '325 Patent



CN '719.5 Design



Zomee Product




CN '833.1 Design



Claimed Design of '325 Patent



CN '719.5 Design



Zomee Product



CN '833.1 Design



Claimed Design
of ‘325 Patent



CN ‘719.5 Design



Zomee Product




CN ‘833.1 Design



40. The attention of the ordinary observer must be drawn to features that differ from the prior art, which are precisely the features that distinguish the “Zomee product” from the claimed design. It is clear from the above side-by-side visual comparison that the peripheral shape or

configuration of the claimed design of "the '325 Patent" and "the CN '719.5 Design", "the CN '833.1 Design" and the "Zomee Product" are substantially the same, any differences being *de minimis* and inconsequential. Therefore, as stated above, since the peripheral shape or configuration of the claimed design of "the '325 Patent" is shown in the prior art, it cannot be relied upon by itself to show infringement.

41. In addition, as indicated in paragraphs 33–36 above, all four features of the claimed design of "the '325 Patent" identified in paragraph 32 above are shown in the prior art and are not new with the claimed design. Specifically, the shape and appearance of the control panel at the upper portion of the claimed design of "the '325 Patent is substantially the same as the control panel of "the EM '0001 Design". As such, it cannot serve as a basis for finding that the "Zomee product" appropriates the claimed design, particularly where, the control panel of the "Zomee product" differs significantly in shape. Furthermore, the centrally located split line that separates the upper and lower compartments having a rectangular section in the middle thereof in the claimed design of 'the '325 Patent" is an old and well known design feature in the prior art in view of the design of "the '270 Patent", as well as "the CN '268.2 Design", "the CN '771.7 Design" and "the CN 719.5 Design." Moreover, the two small downwardly projecting legs that are horizontally spaced from each other at the bottom portion of the claimed design of "the 325 Patent" is not new with the claimed design in view of the design of "the '270 Patent" and "the CN 833.1 Design". Also, the slight outwardly protruding breast shield shown in the claimed design of 'the '325 Patent" is again not new with the claimed design, but a well-known design feature in wearable breast pumps as shown by the design of "the 269 Patent", "the '270 Patent", "the CN '268.2 Design", "the CN '833.1 Design", "the CN '771.7 Design" and "the CN '719.5 Design".

42. Contrary to the four features of the claimed design of "the '325 Patent" being shown in the prior art, the "Zomee Product" has four features that are not shown in the prior art identified above and differ from the claimed design of "the '325 Patent". Specifically, the shape and appearance of the control panel at the upper portion of the "Zomee Product" differs from any of the control panels shown in the prior art identified above as well as the control panel of the claimed design of "the '325 Patent".

43. In addition, the "Zomee Product" includes an attached plug or stopper at the top thereof to prevent spillage of breast milk located adjacent to the control panel and is not shown in any of

the prior art identified above or the claimed design of "the '325 Patent", (see the top and perspective views of the "Zomee Product" below. In paragraphs 56-58 of his declaration, Mr. Fletcher acknowledges that the attached stopper is a difference between the "Zomee product" and the claimed design, yet dismisses it as minor. However, this feature is entirely absent from all of the prior art and is therefore precisely the type of novel, readily observable difference that would be significant to an ordinary observer conversant with the prior art.

Control Panel and Attached Plug or Stopper of Zomee Product






44. Furthermore, as shown below, the "Zomee Product" has a single crescent shaped support on the bottom portion thereof that is not shown by the prior art identified above and differs from the two small downwardly projecting legs that are horizontally spaced from each other at the bottom portion of the claimed design of "the 325 Patent". Again, in paragraphs 56-58 of his declaration, Mr. Fletcher acknowledges that "the '325 Patent" has two small legs for support and the "Zomee product" has a single half oval leg, but characterizes the difference as minor. However, because the two-leg feature of the claimed design is itself shown in the prior art (e.g., "the '270 Patent" and "the CN '833.1 Design"), the "Zomee product's" visually distinct crescent support, which appears nowhere in the prior art, is a meaningful difference that the ordinary observer would notice.

Crescent Shaped Support of Zomee Product



45. Moreover, as shown below, the side surfaces of the "Zomee Product" have three horizontally spaced wave-shaped ribs that are not shown in the prior art identified above or the claimed design of "the '325 Patent". Mr. Fletcher's declaration does not address these ribs at all, making no comparison of this feature against the claimed design or the prior art. This omission further confirms that Mr. Fletcher's analysis is incomplete and fails to account for the overall appearance of the "Zomee product" as perceived by an ordinary observer.

Enlarged Side Views of Zomee Product






46. Since all four of the features of the claimed design of "the '325 Patent" are shown in the prior art and are not new with the claimed design, it is my opinion that the claimed design of "the '325 Patent" is closer in overall appearance to the prior art than the "Zomee Product" particularly in view of the fact that the "Zomee Product" has four features that are not shown in the prior art identified above and differ from the claimed design of "the '325 Patent". Furthermore, as stated above when there are similar prior art designs the differences between the claimed and accused designs that might not be noticeable in the abstract can become significant to the hypothetical "ordinary observer" who is conversant with the prior art. As established in this report, because of the similarity of the prior art designs the four differences between the claimed design of "the '325 Patent" and the "Zomee Product" identified above would, in my opinion, be considered significant to the hypothetical "ordinary observer" who is conversant with the prior art. Therefore, in my opinion, the "Zomee Product" does not infringe "the '325 Patent". Mr. Fletcher reaches the opposite conclusion, but does so only by ignoring the three-way comparison framework and relying on an incomplete two-view analysis. For all the reasons set forth in this declaration, Mr. Fletcher's conclusion that the "Zomee product" infringes the claimed design cannot be credited. Therefore, in my opinion, the "Zomee product" does not infringe "the '325 Patent".

47. In view of the above analysis of the claimed design of "the '325 Patent" with the "Zomee Product" and the prior art, it is my opinion that the four differences in the design features identified above when considered as a whole, distinguishes the overall appearance of "Zomee Product" over the claimed design of "the '325 Patent" such that an "ordinary observer", familiar with the prior art, would not be confused so as to purchase one thinking it to be the other. Therefore, it is my opinion that the design of the "Zomee Product" does not infringe the claimed design of "the '325 Patent".

## VI. <u>OBVIOUSNESS</u>

48. "The Fletcher declaration" contends that "the '269 Patent" is not a proper primary reference to show invalidity of "the '325 Patent" as being obvious. I disagree. "The '269 Patent," at least as set forth in Plaintiff's motion, is a proper primary reference to show invalidity of "the '325 Patent" as being obvious. However, as indicated above in paragraph 27, it is my further opinion that "the CN '719.5 Design" has an overall shape and appearance substantially the same

as the claimed design of "the '325 Patent" as shown in the side-by-side comparisons on pages 22–26 above, and, in my opinion would also be a proper primary reference to show invalidity of "the '325 Patent" as being obvious. Specifically, the only differences between the claimed design of "the '325 Patent and "the CN '719.5 Design" resides in the shape of the control panel shown at the top portion thereof, and the absence in "the CN '719.5 Design" of two small downwardly projecting legs that are horizontally spaced from each other at the bottom portion of the claimed design of "the '325 Patent". However, the control panel at the top of "the EM '0001 Design" has an overall shape and appearance substantially the same as that shown in the claimed design of "the '325 Patent", any differences being *de minimis* and would not be noticeable to an "ordinary observer" given such time and attention as a purchaser gives. Furthermore, the two small downwardly projecting legs that are horizontally spaced from each other at the bottom portion of the claimed design of "the '325 Patent" is not only seen to be a minor, *de minimis* feature, but is clearly taught to be an obvious design feature in wearable breast pumps as shown by the design of "the '270 Patent" and "the CN 833.1 Design". Therefore, to combine "the EM '0001 Design" and "the CN 833.1 Design" with "the CN '719.5 Design" would, in my opinion, be obvious to a designer of ordinary skill in the art and would result in an overall shape and appearance substantially the same as the claimed design of "the '325 Patent.

49. While I do not consider the combination of prior art references set forth above to be a formal opinion regarding invalidity of "the '325 Patent" based on obviousness at this time, I reserve the right to formally address this issue at a later date if necessary.

## VII. CONCLUSION

50. For the reasons stated herein it is my opinion that an "ordinary observer", conversant with the prior art, would consider the 'Zomee Product" dissimilar in overall appearance to the claimed design of "the '325 Patent" such that an "ordinary observer" would not be deceived into purchasing one, supposing it to be the other. Hence, it's my opinion that the design of the "Zomee Product" does not infringe the claimed design of "the '325 Patent" for the reasons stated above. Mr. Fletcher's contrary conclusion rests on a legally incorrect methodology that this Court should reject.

Dated: 3/31/2026

Jim Gandy

# EXHIBIT 1

**Jim Gandy**

5961 Spikerush Trail

Southport, NC 28461

Telephone No.: (910) 599-1329

email: gandy_2@msn.com

---

## Design Patent Consultant

### QUALIFICATIONS

Broad legal and technical background in examining design patent applications with more than 32 years experience at the United States Patent and Trademark Office, (USPTO). Expert knowledge of design patent examination practice and procedure and the application of statutes, rules and relevant case law for determining patentability of a claim in design patent applications. Extensive speaking experience on behalf of the USPTO regarding the filing and examination of design patent applications to various audiences such as the American Intellectual Property Law Association, Independent Inventors Conference and the Visiting Scholars program. I am currently a registered patent agent with the USPTO specializing in the field of design patents.

### EDUCATION

Bachelor of Science in Architectural Design Technology, 1972
Temple University, Philadelphia, PA.

### PROFESSIONAL EXPERIENCE

Design Patent Examiner, Art Unit 2911, USPTO, 1972-1996

As an examiner I worked primarily in class D12, "Transportation". In 1979 I was promoted to primary examiner and granted full signatory authority. I have experience in initiating interference proceedings, preparing examiner's answers for applications on appeal to the Board of Patent Appeals and Interferences and have examined both reexamination and reissue applications. As a primary examiner I trained new examiners and occasionally assumed supervisory patent examiner duties in the absence of the art unit supervisor. In my 24 years as an examiner I made patentability determinations in over 10,000 design patent applications examined.

Supervisory Patent Examiner, Art Unit 2913, USPTO, 1996-1998

In my capacity as supervisor I was in charge of distributing and monitoring the

flow of work for examiners in the art unit as well as reviewing the overall quality and timeliness of the work product performed by examiners. It was also my responsibility to train junior examiners on practice and procedure for examining design patent applications, including the proper application of the statutes and rules. In addition, I would provide refresher training to primary examiners when necessary to assure consistency of the work product. As supervisor I was responsible for evaluating and rating all examiners in the art unit at the end of the fiscal year based on the criteria for the elements under their performance appraisal plan. I was also in charge of the program for uniformity of examination practice for the entire Design Patent Technology Center. In that capacity I was responsible for the development of the Design Examiner Supplemental Training Guide.

Design Patent Practice Specialist, Technology Center 2900, USPTO, 1998-2005

As the design patent practice specialist I was in charge of all training for new and junior examiners as well as continuing education training for all examiners in Technology Center 2900. I was also in charge of making updates to Chapter 1500 Design Patents of the Manual of Patent Examining Procedure as well as the Design Examiner Supplemental Training Guide. I also responded to inquiries about design patent practice and procedure and filing design patent applications from external customers on a daily basis. In my capacity as the practice specialist I reviewed all cases coming back from the Courts, the Board of Patent Appeals and Interferences and the Office of Patent Quality Review for learning points and corrective action if necessary. I monitored all reissue and reexamination applications filed in the technology center and reviewed Office actions prepared by examiners for technical accuracy under the Office's in–process review program. In addition, I would make presentations to attorneys and inventor groups on behalf of the USPTO to share information and learn from each other.

Since retiring from the USPTO I have on occasion counseled patent attorneys and agents in their filings of design patent applications at the United States Patent and Trademark Office. I have also prepared expert reports and testified in a deposition and at trial as an expert witness in the following matters:

Complaint of Ford Global Technologies, LLC under Section 337 of The Tariff Act of 1930, As Amended

- Prepared expert report on sufficiency of disclosure of claim under 35 USC § 112, Re U.S. Design Patent Nos. D498,444, D500,717, D500,969, D500,970, D501,162, D508,223, D510,551 and D539,448 (2008).

Magnadyne Corp. vs. Best Buy Co., Inc.

- Prepared expert report on infringement of U.S. Design Patent No. D522,457 and lack of anticipation or obviousness under 35 USC § 102 and 103(a) respectively, (2010).

- Gave deposition on expert report, (2010).

Weber-Stephen Products LLC v. Sears Holdings Corporation

- Prepared expert report on invalidity of U.S. Design Patent Nos. D564,834 and D609,045 as being obvious under 35 USC § 103(a) – (D564,834), and nonenabling and indefinite under 35 USC § 112(a) and (b) and failing to comply with the written description requirement of 35 USC § 112(a) – D564,834 and D609,045, (2015).

- Prepared expert report on non-infringement of U.S. Design Patent Nos. D564,834 and D609,045, (2015).

- Gave deposition on expert reports, (2015).

Trinity Manufacturing, L.L.C.; Campbell Soup Company; and Campbell Sales Company v. Gamon Plus, Inc.

- Prepared Declaration in support of a Petition for *Inter Partes* Review of U.S. Design Patent Nos. D595,074, D621,644, D621,645 and D621,646, (2016).

- Prepared Supplemental Declaration in support of Petitioner's Reply to Patent Owner's Merits Response and Declaration and Supplemental Declaration of Terry Johnson for the *Inter Partes* review of U.S. Design Patent Nos. D621,645 and D612,646, IPR2017-00091 and IPR2017-00094 respectively, (2017).

- Gave deposition on Supplemental Declaration, (2017).

Nite Glow Industries, Inc., I Did It, Inc., and Marni Markell Hurwitz v. Central Garden & Pet Company and Four Paws Pet Company, d/b/a Four Paws Products, LTD.

- Prepared expert report on design patent practice regarding the filing of a request for expedited examination under 37 CFR 1.155 and its availability to design patent applications on certain flea and tick dispensers and cartridges identified in the report, (2016).

- Gave deposition on expert report, (2017).

- Testified on expert report at trial, (2018).

LKQ Corporation and Keystone Automotive Industries, Inc. v. GM Global Technology Operations LLC.

- Prepared Declaration in support of a Petition for *Inter Partes* and Post Grant Review of U.S. Design Patent Nos. D823,741, D797,625, D813,759, D855,508 and D864,065, (2019 – 2020).

- Gave deposition in 2020 and 2021 on Declarations.

Simplehuman, LLC, v. iTouchless Housewares and Products, Inc.

- Prepared Declaration and Supplemental declaration regarding how certain lines in the drawings would be properly interpreted and understood according to the Patent Rules and by an "ordinary observer" for U.S. Design Patent Nos. D644,807 and D729,485, (2020).

ABC Corporation I et al v. The Partnerships and Unincorporated Associations Identified on Schedule "A"

- Prepared expert declaration on non-infringement of U.S. Design Patent Nos. D732,723, D738,256, D784,195 and D785,112, (2021).

- Prepared expert rebuttal declaration on non-infringement of U.S. Design Patent Nos. D732,723, D738,256, D784,195 and D785,112, (2022).

- Gave deposition on expert declarations, (2022).

- Testified on expert reports at preliminary injunction hearing, (2022).

Hangzhou Chic Intelligent Technology Co., Ltd. et al v The Partnerships and Unincorporated Associations Identified on Schedule "A"

- Prepared expert declaration on non-infringement of U.S. Design Patent Nos. D732,723, D738,256, D784,195 and D785,112, (2021).

Zhejiang Yuanzheng Auto & Motorcycle Accessories Co., LTD. v. Arex Industries, Inc.

- Prepared expert rebuttal declaration in support of plaintiff's Complaint for Declaratory Judgement of non-infringement of U.S. Design Patent No. D909,634 (2023).

- Prepared a second expert rebuttal declaration in support of plaintiff's Complaint for Declaratory Judgement of non-infringement of U.S. Design Patent No. D909,634 (2023).

- Gave deposition on expert rebuttal declaration, (2023).

- Prepared a third expert rebuttal declaration in support of plaintiff's Complaint for Declaratory Judgement of non-infringement of U.S. Design Patent No. D909,634 (2024).

Heifeng Zhizao (Shenzhen) Technology Co., LTD. D/B/A/ Bebird v. The Partnerships and Unincorporated Associations Identified on Schedule "A"

- Prepared expert declaration as to invalidity of U.S. Design Patents Nos. D972,900 and D974,856 (2023)

- Prepared expert rebuttal declaration as to invalidity of U.S. Design Patents Nos. D972,900 and D974,856 (2023).

- Testified on expert reports at preliminary injunction hearing, (2023).

Fujifilm North America Corporation v. Polaroid IP B.V. and PLR Brand Services, LLC.

- Prepared rebuttal expert declaration regarding design patent examination practice and procedure before the United States Patent and Trademark Office, (2023).

- Gave deposition on rebuttal expert declaration, (2023).

Ningbo Ningshing Ubay Supply Chain Co., LTD v. Partnerships and Unincorporated Associations Identified on Schedule “A”

- Prepared expert declaration on non-infringement of U.S. Design Patent No. D998,387 (2024)

- Testified on expert declaration at evidentiary hearing, (2024).

Coplus Inc., v. Zhejiang Yuanzheng Auto & Motorcycle Accessories Co., LTD

- Prepared expert declaration in support of defendant’s counterclaim for declaratory judgement of non-infringement of U.S. Design Patent No. D812,791 (2024)

Shenzhen Xiang Wang Technolog Co., Ltd. v. Vikingstrength, LLC

- Prepared expert declaration in support plaintiff’s declaratory relief of non-infringement and invalidity of U.S. Design Patent No. D1,052,668 (2024)

Caifa Jiang v. Partnerships and Unincorporated Associations Identified on Schedule “A”

- Prepared expert declaration in support defendants’ declaratory relief of non-infringement and invalidity of U.S. Design Patent No. D1.000,645 (2025)

Diode Dynamics, L.L.C. v. 5DLight Inc., d/b/a/ Lasfit

- Prepared expert declaration on claim to priority under 35 U.S.C. § 120 as a continuation-in-part and invalidity of U.S. Design Patent No.

D974,648 (2025)

- Prepared rebuttal declaration to the opening expert report of John Kaloustian (2025)

- Gave deposition on expert declaration on claim to priority under 35 U.S.C. § 120 as a continuation-in-part and invalidity of U.S. Design Patent No. D974,648 and rebuttal declaration to the opening expert report of John Kaloustian (2025)

Guangzhou Haoqian Trading Co., Ltd v. Amy Harlow and Wagwear, LLC

- Prepared expert declaration in support plaintiff's declaratory relief of non-infringement and invalidity of U.S. Design Patents No. D917,796 and D938,102 (2025)

GM GLOBAL TECHNOLOGY OPERATIONS, LLC v. QUALITY COLLISION PARTS, INC.

- Prepared expert declaration on invalidity of U.S. Design Patents No. D670,840, D777,622, D805,964, D811,954, D811,964, D826,114 and D843,025 (2025)

LULULEMON ATHLETICA CANADA INC. AND LULULEMON USA, INC., v. COSTCO WHOLESALE CORPORATION

- Prepared expert declaration on validity of U.S. Design Patents Nos. D989,442 and D1,035,219 with regards to definiteness of the drawing views (2026)

Heifeng Zhizao (Shenzhen) Technology Co., LTD. D/B/A/ Bebird v. The Partnerships and Unincorporated Associations Identified on Schedule "A"

- Prepared expert declaration as to invalidity of U.S. Design Patents Nos. D972,900 and D974,856 as being obvious under 35 U.S.C. § 103 (2026)

- Prepared expert amended and rebuttal declaration as to invalidity of U.S. Design Patents Nos. D972,900 and D974,856 as being obvious under 35 U.S.C. § 103 (2026)

## AWARDS

Received outstanding rating at the end of fiscal year under performance appraisal plan both as an examiner, supervisor patent examiner and design patent practice specialist for 32 consecutive years.

Received Department of Commerce Bronze Medal Award in March of 1983 for outstanding competence in the performance of official duties in the design patent field over a long period

of time.

Received Distinguished Career Award from the Patent and Trademark Office in December 2000, for sustained superior performance in the examination of design patent applications and in the leadership of art units.

Received Norman P. Morgenstern Award in June of 2004 for recognition of the Supervisory Patent Examiner whose work exemplifies bold leadership and innovative activities that make a significant contribution to the U.S. Patent and Trademark Office.